UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TONYA SALTER,

                              Plaintiff,

                                                                         Case # 15-CV-322-FPG

v.

                                                                         DECISION AND ORDER

CATHOLIC HEALTH SYSTEM,

                              Defendant.

## INTRODUCTION

Plaintiff Tonya Salter ("Plaintiff") commenced this *pro se* action alleging racial discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the New York Human Rights Law, N.Y. Exec. L. §§ 290-297, ("NYHRL"). ECF No. 1.

After discovery and before the deadline for filing dispositive motions, Plaintiff and Defendant both filed Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on essentially the same issue: whether Plaintiff was terminated from her employment based on her race. ECF Nos. 41, 42.[1] After considering the moving papers, the record evidence, and the applicable law, the Court grants Defendant's Motion for Summary Judgment and dismisses the Complaint in its entirety.

---

[1] Plaintiff's opposition to Defendant's motion was incorrectly captioned as a "Notice of Motion" and therefore docketed as a new motion for summary judgment on February 10, 2017. *See* ECF No. 48. The Clerk of Court shall correct the docket sheet to reflect that this entry is "Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" and not a separate motion. The Court has reviewed Plaintiff's opposition (ECF No. 48) and her original moving papers (ECF No. 41) in their entirety.

# BACKGROUND[2]

Plaintiff contends that she was terminated from her employment with Catholic Health Systems ("CHS" or "Defendant") because she is African-American. This is the sole basis of her Complaint in this action. ECF No. 1 at 6.

Plaintiff began her employment with CHS in September 2003 as a registered nurse ("RN") at Sisters of Charity Hospital. She was terminated from her employment in March 2014. At all times during her employment, Plaintiff was required to comply with CHS's written policies and procedures as relevant to medical treatment to patients.

In October 2013, Plaintiff was responsible for examining patients to monitor for pressure ulcers or other skin disorders. On October 16, 2013, Plaintiff failed to assess a patient with a pressure ulcer to her sacrum. More specifically, she documented that she examined the patient and no pressure ulcer was present. After the patient's daughter reported the pressure ulcer, a nurse manager reviewed the patient's documentation and observed that the completed "skin record" reported that the patient's skin was intact.

Plaintiff does not dispute the omission, but rather contends that numerous medical staff members missed the skin ulcer, including emergency room ("ER") staff and two other RNs that similarly documented no skin issues for that patient. Defendant's Exhibit "C" (ECF No. 42-4) shows that those individuals were also interviewed regarding the incident. Plaintiff admitted to the nurse manager that she did not actually "see" the patient, and told her that she was distracted due to personal issues. *Id.*

A Corrective Action Report dated October 22, 2013 indicated that Plaintiff violated policy HR 11-PC M(9) (jeopardizing the health of a patient through neglect of duty and violation of safety

---

[2] The following material facts, drawn from the parties' Local Civil Rule 56 Statements and evidentiary submissions, are undisputed unless otherwise noted.

rules) and HR 11-PC L(4) (failure to carry out assigned duties and responsibilities). Plaintiff was issued a "Final Warning" and was given a 12-month re-evaluation period to "meet the hospital[']s expectations, demonstrating understanding and adherence to policies and procedures . . . . " ECF No. 42-5.[3] Plaintiff was also removed from her role in the skin unit for 12 months. The Corrective Action Report and Final Warning advised Plaintiff that she was subject to "progressive disciplinary action," should the policy violations continue. Plaintiff signed the Final Warning and did not object to the level of discipline she received. Approximately five months later, Plaintiff violated hospital policy HR 11-PC again while her performance was subject to review/improvement under the terms of the Final Warning.

CHS has a written policy—LAB-TRANS-201 ("CHS Transfusion Policy")—that governs the administration of blood and blood products. ECF No. 42-6. As an RN, Plaintiff had to comply with the CHS Transfusion Policy. Among other things, the CHS Transfusion Policy requires that an order for blood or blood components must be made by a physician, physician assistant, nurse practitioner, licensed independent practitioner, or other appropriately-credentialed medical staff; and that consent for a transfusion must be obtained from the patient before acquiring the blood product from the laboratory. *Id.* It further provides that a Blood Product Release form must have two RN/LPN/physician signatures to verify that the above transfusion order and consent have been obtained and documented. *Id.* The Blood Product Release form contains two signature blocks, which verify "both patient consent and physician order for the product indicated below . . . ." ECF No. 42-7.

---

[3] Plaintiff believes she should not have received a Final Warning because the CHS Human Resources Policy and Procedure (ECF No. 42-13) provides for intermediate corrective measures before a Final Warning is issued. The policy document is clear, however, that a "serious offense," such as jeopardizing the health or safety of a patient through neglect of duty, "will generally lead to a Final Written Warning or Immediate Discharge, even on the first offense." *Id.* at 11.

On March 24, 2014, Plaintiff was assigned to assist a patient who required a blood transfusion. An order for a blood transfusion was written for the patient that morning, was documented, and existed in the patient's medical record. The clinical transfusion record indicates that Plaintiff began the transfusion at approximately 2:55pm, yet the patient did not give consent before the first unit of blood was administered. Nonetheless, Plaintiff completed the Blood Product Release form indicating that she verified patient consent and the physician order. In addition to Plaintiff's signature, the signature of a second nurse, Mary Jane Abrams, was also present on the Blood Product Release form. The patient later provided a written Consent for Transfusion of Blood sometime on March 24, 2014. ECF No. 42-9. Plaintiff admits that the patient did not consent before she administered the first unit of blood.

A nurse manager interviewed Plaintiff the following day. She admitted that she did not check for or receive consent from the patient, but disputes the characterization that she "falsely" verified the existence of patient consent. ECF No. 48 at 14, ¶ 45.

Plaintiff now claims that the patient, in need of surgery, had multiple blood transfusions days earlier and appears to suggest that such consent could be waived based on emergent circumstances or upon ER admission. ECF No. 48 at 14.[4] Nonetheless, Plaintiff's own sworn testimony and the undisputed proof in the record unequivocally demonstrates that patient consent was not obtained at the time of the transfusion or when the verification was signed. She further asserts that she was not the only medical staff member who failed to obtain or verify consent. *Id.*

Both Plaintiff and Mary Jane Abrams were disciplined as a result of the patient blood transfusion incident—Ms. Abrams received a Corrective Action Report and Written Warning, and Plaintiff was terminated because the incident took place five months after her Final Warning and

---

[4] Plaintiff does not claim that such circumstances actually existed at the time and submits no proof to that end.

while her performance was still subject to review/improvement. Ms. Abrams was not terminated and was not under a Final Warning for hospital policy violations at the time of the incident.

Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") in August 2014. On January 22, 2015, the EEOC issued Plaintiff a Determination Letter and a Right to Sue Letter. Specifically, the Determination Letter indicated that Plaintiff admitted to being terminated for failing to obtain written patient consent for a blood transfusion while "completing a one year probation following a previous incident that resulted in a final warning." ECF No. 1, Ex. B at 8-9. The EEOC concluded that there was a legitimate, non-discriminatory reason for Plaintiff's discharge and that no further investigation into her allegations was warranted. *Id.*

Plaintiff states that Katie Schreiner, a nurse manager, was the only person that allegedly discriminated against Plaintiff or committed any unlawful employment practice against her. No other supervisors or co-workers engaged in any discriminatory acts. Ms. Schreiner never commented about Plaintiff's race, used a racial slur, or referenced any other co-worker's race. Plaintiff does not dispute that Ms. Schreiner never engaged in any overt acts of discrimination, but states that she was "singled out" by Ms. Schreiner because the "majority of [her] write-ups came from Katie Schreiner." ECF No. 47 at 38-39.

Plaintiff did not make a formal complaint with Sisters Hospital or CHS regarding the alleged discrimination or unfair treatment from Ms. Schreiner at any point during her employment.

## DISCUSSION

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together

5

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *see Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). Regarding materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. More importantly, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250.

As the Second Circuit observed in *Duse v. Int'l Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001), "[i]n assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." 252 F.3d 151, 158 (citing *e.g., Anderson*, 477 U.S. at 255). However, "[i]f the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and do not suffice to defeat a motion for summary judgment." *Duse*, 252 F.3d at 158 (citing *e.g.*, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir. 1992), *cert. denied,* 508 U.S. 909 (1993); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986) (the existence of a factual issue will

not suffice to defeat a motion for summary judgment where that issue is not material to the ground of the motion), *cert. denied,* 480 U.S. 932 (1987)).

As is the case here, *pro se* submissions must be read liberally and interpreted to "raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F. 3d 787, 790 (2d Cir. 1994) (internal citation omitted). However, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal citation omitted).

## II. *McDonnell Douglas* Framework

Plaintiff alleges intentional employment discrimination based on her race in violation of Title VII and Section 296 of the NYHRL. Because the analysis of NYHRL claims parallels the analysis of Title VII claims, the Court considers them "in tandem." *Leopold v. Baccarat, Inc*., 174 F.3d 261, 264 n. 1 (2d Cir. 1999); *see also Weinstock v. Columbia Univ*., 224 F.3d 33, 42 n.1 (2d Cir. 2000) (citing cases), *cert. denied*, 540 U.S. 811 (2003).

Title VII makes it unlawful "for an employer . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Claims brought under this provision are examined under the burden-shifting analysis the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See, e.g., Weinstock*, 224 F.3d at 42; *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).

Under this framework, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action

occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 137–38 (2d Cir. 2003); *Collins v. N.Y. City Trans. Auth.*, 305 F.3d 113, 118 (2d Cir .2002). The plaintiff's burden of proof at the *prima facie* stage is "de minimis." *Weinstock*, 224 F.3d at 42.

Once the plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell*, 411 U.S. at 802. In other words, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal quotation marks omitted).

Upon the defendant's proffer of a legitimate non-discriminatory reason for its employment action, "the presumption of discrimination arising with the *prima facie* case drops from the picture . . . [and] the plaintiff must then establish that the defendant's proffered reason is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 510-11).

To demonstrate pretext, the plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (quotation marks and alterations omitted).

### III. Analysis

Defendant moves for summary judgment on the grounds that Plaintiff fails to state a *prima facie* case of discrimination, and, alternatively, because CHS had a legitimate, non-discriminatory

8

reason for her termination. ECF No. 42-15 at 18-19. For the following reasons, the Court finds that Defendant is entitled to the requested relief.

Defendant does not contest that Plaintiff is a member of a protected class, was qualified for her position, and suffered an adverse employment action. ECF No. 42-15 at 19-20. Thus, the issue is whether Plaintiff has demonstrated that her termination occurred under circumstances giving rise to an inference of discrimination for purposes of establishing her *prima facie* case.

It is undisputed that Plaintiff committed multiple policy violations warranting disciplinary actions. She therefore attempts to raise an inference of discrimination by taking issue with Defendant's dissimilar treatment of Ms. Abrams, who also violated hospital a policy violation with regard to the blood transfusion incident, and with Ms. Schreiner's alleged unfair treatment of Plaintiff. More specifically, Plaintiff claims that Ms. Schreiner told Plaintiff to "keep her opinions to herself," and did not allow Plaintiff to leave work early. ECF No. 41 at 7. The Court finds that this is insufficient to meet her burden of establishing a *prima facie* case.

Plaintiff's conclusory allegations are not enough to withstand summary judgment. When considering whether a plaintiff has shown that she was subjected to disparate treatment, *i.e.*, treated "less favorably than a similarly situated employee outside [her] protected group," the Second Circuit requires that the plaintiff demonstrate that she was "similarly situated in all material respects" to the individuals with whom she seeks to compare herself. *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir. 2000). Here, Plaintiff fails to offer any details about the employee she alleges was treated more favorably, Ms. Abrams, let alone any evidence demonstrating that they were similarly situated. Further, she does not dispute that, although Ms. Abrams and Plaintiff violated the same policy, Plaintiff was under a Final Warning at the time whereas Ms. Abrams was not, and that both nurses were disciplined as a result of the incident. ECF No. 48 at 16-18. *See*

*generally Desir v. BOCES Nassau Cnty.*, 803 F. Supp. 2d 168, 180 (E.D.N.Y. 2011), *aff'd*, 469 F. App'x 66 (2d Cir. 2012) (to be "similarly situated," the comparator "must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it"). Plaintiff has not met her minimal burden of showing that she was treated differently than a similarly situated employee of a different race.

Moreover, "feelings and perceptions of being discriminated against are not evidence of discrimination," and therefore Plaintiff's speculation that Ms. Schreiner targeted her based on her race is insufficient to support an inference of discrimination. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999). Plaintiff testified that the majority of her "write-ups" came from Ms. Schreiner and that she felt "singled-out." ECF No. 47 at 38-39. Plaintiff also testified that Ms. Schreiner made a sarcastic remark regarding Plaintiff's personnel file, which Plaintiff felt was directed at her because she was the only African-American in the room at the time. *Id.* at 65-66. But Plaintiff never voiced her concerns about the alleged discrimination to anyone at Sisters Hospital or CHS, *see id.*, and did not seek a "Fair Treatment Review" as provided by under CHS's Human Resource Policy. *Id.* at 41-42. Finally, Plaintiff's speculation is further underscored by her testimony regarding Ms. Schriener not allowing Plaintiff to leave early from a shift:

> Q: In any way did she—is there anything other than your belief or your speculation that suggests that [Ms. Schriener] telling you to [continue a shift] was because you are African-American?
>
> A: When I add up everything, that's what it leads me to.

ECF No. 47 at 75.

Although Plaintiff's burden at this stage of the analysis is "not onerous," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), she nonetheless falls short of the *prima facie* requirements because she offers no more than conjecture and speculation in support of her claim.

The Second Circuit has held that an adverse employment action can be shown to have occurred under circumstances giving rise to an inference of discrimination through evidence of, *inter alia*, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) (citation and quotation marks omitted). Simply put, Plaintiff has provided no such evidence here. Because Plaintiff has not established a *prima facie* case of discrimination, summary judgment in Defendant's favor is appropriate.

Even though the Court need not reach the rest of the *McDonnell Douglas* analysis, it briefly addresses the Defendant's alternative argument that CHS had a legitimate, non-discriminatory reason for Plaintiff's termination.

Here, Plaintiff does not dispute that she violated hospital policy. Rather, she contends that she should have received another written warning in lieu of her termination. ECF No. 48 at 16-17, ¶ 46. Plaintiff's reading of CHS Policy HR-011-PC is incorrect. It explicitly states that policy violations involving patient safety are punishable by a Final Warning and/or Termination, including in the first instance. In any event, Plaintiff was given the safeguard of a Final Warning with a 12-month probationary period after her first serious infraction, yet committed another violation within five months. She was therefore afforded the benefit of CHS's progressive disciplinary scheme, contrary to the current allegations.[5] Plaintiff's performance deficiencies, including one serious policy violation during her probationary period of re-evaluation, are

---

[5] Plaintiff also testified that that she had eight violations of the CHS attendance policy by February 2013 for tardiness or absenteeism. ECF No. 47 at 46.

legitimate, non-discriminatory reasons for her termination. *See, e.g.*, *Bong Chul Kim v. Bogopa Servs. Corp.*, No. 15CV2174, 2017 WL 3242253, at *5 (E.D.N.Y. July 28, 2017) (the defendant-employer articulated a legitimate, non-discriminatory reason for termination where the plaintiff received multiple warnings for attendance, tardiness, and conduct violations, including an attendance violation while on a "last chance warning").

After a defendant sets forth a non-discriminatory justification, the burden returns to the plaintiff to demonstrate that the proffered reason is pretextual. The defendant is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). To establish pretext, Plaintiff must do more than set out a *prima facie* case and put forward "evidence from which a fact finder could find that the employer's explanation . . . was false." *LaGrande v. Key Bank Nat. Ass'n*, 393 F. Supp. 2d 213, 220 (S.D.N.Y. 2005) (citing *James*, 233 F.3d at 153).

Without any evidence of discriminatory animus, the crux of Plaintiff's case for pretext is the same as her *prima facie* case—her belief that she was disciplined unfairly because of her race. This is insufficient to survive summary judgment. It is well-settled that "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985). Indeed, Plaintiff's testimony indicates that she acknowledged her poor workplace performance and attributed it to "personal issues," including her recent divorce. ECF No. 47 at 43. Also, as previously discussed, she presents no evidence of discriminatory animus with respect to the different discipline administered to her co-workers. *See Mack v. Paris Maint. Co. Inc.*, No. 14CV6955, 2016 WL 8650461, at *8 (S.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, No. 14CIV6955, 2016 WL 1071030 (S.D.N.Y. Mar. 17, 2016) (no pretext shown where plaintiff alleging disparate

treatment "ignore[d] the two employees' markedly different disciplinary histories," and where she never heard supervisor mention her race).

Because Plaintiff raises no genuine material issue of fact for trial, Defendant's Motion for Summary Judgment is granted. Likewise, Plaintiff fails to establish that there is no disputed issue of fact that she was terminated on account of her race, and her Motion for Summary Judgment is denied. Plaintiff's Complaint asserting racial discrimination under Title VII and NYHRL must be dismissed.

## CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgment (ECF No. 42) is GRANTED, Plaintiff's Motion for Summary Judgment (ECF No. 41) is DENIED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 10, 2017
　　　　Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court